JOSEPH DENNIS, Administrator, &c. *vs.* MARK A. GIL-
LESPIE et al.

The right of contribution among sureties, vests, not in contract, but in natural
equity, on the ground of burden and benefit.

When a party has to recover upon the principles of natural equity, the defend-
ant, in his defence, may appeal to the same principle. *Held*, there is no error
in the decree of the court below.

ON appeal from the superior court of chancery; Hon. Stephen
Cocke, chancellor.

The facts are contained in the opinion of the court. Mr.
Sloan's brief also contains a full statement of the facts of the
case.

*A. R. Johnston*, for appellants.

It is established by the depositions in the cause, that the estate
of Granberry, through Dennis, the administrator, paid the whole
of the judgment rendered upon that surety obligation. Then,
it is perfectly clear, upon the authorities, that the administrator
of Granberry is entitled to contribution. One surety, who pays
the debt of an insolvent principal, (and the Kents are shown
to be insolvent,) is entitled to contribution from his co-sureties.
On principles of justice and equity, the sureties, in such case,
must divide the loss between themselves. The law will not per-
mit one surety, to bear the whole burden, whilst his co-sureties,
equally bound with himself for a defaulting principal, go entirely
free from loss. Reference, in support of the principle, is made
to the following authorities: 1 Story, Eq. Jur. §§ 492–496, &c.;
2 Com. Dig. ch. 4, D. 6; *Sayer* v. *Nelson*, 1 Vern. 456; *Averall* v.
*Wade*, Lloyd & G. R. 264; 1 Story, Eq. Jur. § 496.

The facts and evidence in this case are quite voluminous.
The defence attempted to be established is, that there was a
fraudulent combination between defendant Kent and the ad-
ministrator of Granberry, to defraud Gillespie; but I confidently
submit, that there is nothing in the case conducing to prove
any such thing.

The whole record, attentively considered, shows this to be a perfectly fair transaction; the fraud charged is not established.

*D. Shelton,* on the same side.

*Sloan,* for appellee.

The bill was filed in the court below by Dennis, against Stephen Granberry and Mark A. Gillespie, who became co-sureties for Richard and E. D. Kent, on a promissory note payable to Nelson, Carleton & Co., on the 1st of May, 1838, in the sum of $2,535.97.

On the 10th of April, 1840, Nelson, Carleton & Co. recovered a judgment on said note, in the sum of $3,141.61. On the 28th of August, 1840, S. Granberry died. Dennis, the appellant, and M. Granberry, administered on his goods, &c.; the latter has since died, and Dennis is now the sole surviving administrator. On the 12th of May, 1849, execution issued, and was levied on certain lands, as the property of S. Granberry, upon which the sheriff made the following return: "not sold for want of time." A writ of *venditioni exponas* was then issued; but before sale a writ of error was prosecuted, and the judgment was afterwards affirmed. On the 11th of May, 1842, a *fi. fa.* issued, and was levied on the lands above mentioned, when the benefit of the valuation law was applied for by Dennis, and the sale thereby stated. On the 17th of July, 1843, a writ of *venditioni exponas* issued, upon which the sheriff made the following return: "not sold for want of bidders." Another writ of like character issued in January, 1846, when Dennis, as he alleges, with a view of protecting the land from sale, commenced payment to Nelson, Carleton & Co. various sums of money in discharge of the judgment, until finally he had discharged the whole.

Richard Kent became bankrupt, and died; E. D. Kent became unable to pay. Dennis had discharged the whole demand out of the assets of Stephen Granberry, deceased, and he now prays contribution against the other parties.

M. A. Gillespie, in his answer, admits, that to prevent the sale of the lands, sums of money were paid, &c.; but denies that these sums were paid, either by S. Granberry or by his ad-

ministrator, out of his assets or out of his own funds. Charges that before " Nelson, Carleton & Co." recovered their judgment, S. Granberry, who was the father-in-law of E. D. Kent, made a pretended and fraudulent purchase of these lands at marshal's sale, under execution against Kent; that he paid therefor in whole or in part the money of Kent, intending thereby to secure the use of the same to Kent, and by taking a conveyance to himself, to protect it from sale under execution against E. D. Kent; that Kent had occupied those lands for eight years ; had made good crops and realized large profits therefrom ; that the money thus arising was applied in the payments aforesaid to " Nelson, Carleton & Co.;" that when so applied, it was fraudulently placed to the credit of Dennis, administrator, by " Nelson, Carleton & Co.;" and by Dennis to the credit of Kent, as if in payment of rent, &c.

That in 1843, Kent paid on said judgment $800, and then agreed with Nelson, Carleton & Co. to pay them $1,000 annually, until the whole should be paid; that he also paid in like manner $370 in 1844; that execution had been stayed for definite periods, from the year 1843 to that of 1846, without the knowledge or consent of Gillespie. The answer of Gillespie was made a cross-bill against Dennis and Kent. Dennis, in answer to the cross-bill, admits the payment by Kent of $800, on the 10th of December, 1843, and that by an arrangement between them, it was placed to the credit of Dennis by Nelson, Carleton & Co., and to the credit of Kent by Dennis, as for rent, &c., as charged. Admits the sale of the lands by the marshal, as charged in the cross-bill; that Kent remained in possession thereof, but paid no rent to S. Granberry during his lifetime ; that he first agreed to pay rent to Dennis, administrator, &c., since the death of Granberry. That he, Dennis, once stipulated for a stay of execution, and that Gillespie was not consulted. See Exhibit E., Record; p. 105.

The deposition of E. D. Kent was taken on the application of Dennis, and shows: " That when his land was sold under execution by the marshal, and when S. Granberry, the father-in-law, became the purchaser, he, deponent, had used efforts to prevent competition amongst bidders; that he himself furnished $2,810 of the purchase-money, which was paid to that officer.

This sale took place in 1838; S. Granberry died in 1840. He paid no rent to Granberry during his life; there was no contract with him to pay rent. In 1843, he paid to the attorney of Nelson, Carleton & Co. $800, and took therefor a receipt, acquitting Dennis, administrator, &c., of that sum. Some time afterwards, he paid to one Poor, plaintiff's agent, $260, and took a receipt in like manner.

Mr. Justice FISHER delivered the opinion of the court.

The complainant, as administrator of the estate of Stephen Granberry, deceased, filed his bill in the superior court of chancery against the defendant in error, alleging that in 1838, the intestate and Gillespie became joint securities on a note made by R. and E. D. Kent for $2,535.97, to Nelson, Carleton & Co., upon which judgment was recovered against all the signers in the circuit court of Hinds county, and that the money due thereon has been wholly paid by the complainant as Granberry's administrator. The bill is filed against Gillespie, to compel him to contribute as a co-surety a moiety of the sum paid by complainant.

Gillespie's answer, cross-bill, and proof, make this case a defence to the bill: that in 1838, a valuable tract of land belonging to E. D. Kent, one of the principals in the note, and a son-in-law of Granberry, was sold by the marshal under execution, when Granberry, in pursuance of an arrangement between himself and Kent, became the purchaser; that Kent furnished the sum of $2,810, with which to pay in part Granberry's bid at this sale. It also appears that Kent, at the sale, used his influence with his friends and others, to induce them not to bid against Granberry, as he (Kent) was interested in the purchase.

The facts very clearly show, that the purchase was fraudulent as to Kent's creditors, and that Nelson, Carleton & Co. could, if necessary, have subjected the land, as the property of Kent, to the payment of their debt. One of two propositions is certainly established. The land was either purchased by Granberry for the benefit of Kent, or he became Kent's debtor to the amount of $2,810; a sum at that time exceeding the amount of the note of Nelson, Carleton & Co. It is, therefore, wholly

immaterial in what light the transaction may be viewed, the same result follows; and we are bound to believe that the tract of land was purchased by Granberry at a price greatly below its value, from the direct testimony on the subject, as well as from the fact that Kent, the owner, exerted his influence at the sale to stifle competition amongst the bidders, or those who otherwise might have been bidders. To suppose that he was not interested in the purchase by his father-in-law, is not only to make his conduct obnoxious to the plainest principles of law and equity, but, at the same time, to deny to him ordinary common sense. He comes forward himself as a witness, and testifies to the fact, that he was anxious to prevent competition at the sale, and also that he advanced the sum named, as part of the purchase-money. We cannot suppose, that in his embarrassed condition, he intended to make his father-in-law a present of this money, because a man must be just before he shall be generous. Neither can we suppose, for the same reason, that the father-in-law intended to receive it as a present. But we must suppose that Kent was the real party to be benefited by the purchase, and that Granberry's name was used because the law would not sanction the purchase in the name of Kent.

We do not, however, deem it at all necessary to offer any special reasons, to sustain a proposition which all must admit. Under no view of the question is the complainant entitled to relief. The right of contribution amongst sureties rests not in contract, but in natural equity, on the ground of burden and benefit. If a party base his right to recover upon principles of natural equity, the defendant may appeal to the same principles in his defence. The complainant has shown as his equity the payment of the whole debt of the principal, by the estate of Granberry, and thus makes out a *primâ facie* case to relief; while the defendant on his part has shown, that Granberry received a sum of money exceeding the amount of the debt, before it was due, from the principal, besides purchasing in part with the money thus received, a valuable tract of land at a reduced price. To state the case, is to decide it.

Decree affirmed.