# WHEELING.

## BOUGHNER v. HALL.

Submitted January 29, 1884—Decided May 3, 1884.

1. If a surety, who has paid the debt of his principal, seeks contribution from his co-sureties, and he has been partly reimbursed what he has paid by the principal debtor from any source whatever, he must give credit for the amount reimbursed to him, and he can only claim contribution for the balance of the debt so paid by him as such surety. (p. 264.)

2. If a debtor transfer to his sureties, in order to indemnify them, claims in the hands of a third party for collection, and one of such sureties receives money upon said claims and fails to apply

it for their indemnity, and he is afterwards compelled to pay the debt of·his principal, and he seeks contribution from his co-sureties for the moneys so paid by him, he will be compelled to account for the amounts so received by him upon said claims and will be entitled to contribution only for the balance of the debt. (p. 264.)

3. P., sheriff of R. county, being in arrears for the State revenue for the year 1856, with certain of his sureties on his official bond borrowed from T. two thousand five hundred dollars, to be used in paying said revenue, and B., one of said sureties, by the consent of all the others received the amount of said loan and applied a part thereof to pay said revenue and retained the residue. B. was afterwards compelled to pay the balance due to T. upon said loan and then sued his co-sureties for contribution. HELD :

He must account for the proceeds of said loan remaining in his hands at the time he paid the debt ; and he is only entitled to contribution upon the balance of the debt so paid by him. (p. 261.)

4. Where P., sheriff of R. county, the plaintiff, and other co-sureties of P. entered into an agreement under seal with T., that T. would pay for P. two thousand five hundred dollars on the revenue for 1856, which they agreed but failed to repay, and T. sued and recovered against the surviving obligors in said agreement a judgment, which was afterwards paid by B., one of said sureties, who sued his co-sureties for contribution. HELD:

Notwithstanding the said judgment it was competent for the co-sureties to make defence to such suit by showing, that the said two thousand five hundred dollars borrowed from T. was with the consent of P. and of the co-sureties, at that time paid by T. to B. to be applied upon said revenue, and that when he paid the debt to T. a large portion of said loan remained in his hands, for which he must account, and he was only entitled to contribution for the balance of the debt. (p. 263.)

WOODS, JUDGE, furnishes the following statement of the case :

This was a bill filed in the circuit court of Ritchie county, by Daniel Boughner, against Cyrus Hall, Jonathan H. Haddox, Levi Hammond, Thomas F. Hammond, James Taylor, William M. Patton, Charles T. Lewis, and the executors and residuary devisees of James Malone, deceased; and against John C. Patton, executor of William Patton, deceased; and certain persons named as his heirs; and against Mrs. H. J.

Jackson, widow, and Isaac Jackson administrators of Henry J. Jackson, deceased, and certain persons named as his heirs at law, and Benjamin Rust, to obtain contribution from decedents and Hall, Haddox, Levi Hammond and Charles T. Lewis, as co-sureties with the plaintiff of said William M. Patton, in an obligation executed to said Taylor on the 8th day of December, 1857, for two thousand five hundred dollars with interest from that date. The bill alleges the execution of said obligation, and that the obligee, Taylor, in an action at law in the circuit court of Ritchie county recovered against the defendants Hall, Haddox, Levi Hammond, William M. Patton and Charles T. Lewis, as surviving obligors, a judgment upon said obligation for four thousand two hundred and seventy-seven dollars and thirty-three cents with interest from the 6th of May, 1879, and costs, which was carried by writ of error to the Supreme Court of Appeals, where the same was affirmed with costs amounting to one hundred and five dollars and forty cents; that executions issued upon both of said judgments, and the plaintiff was obliged to, and did discharge the same by paying the whole amount thereof, and that no part of the amount so paid by him has been repaid; that the said James Malone and H. J. Jackson died before Taylor sued and recovered his judgment, that the said Wm. M. Patton is insolvent, and he supposes that Hall and Haddox are solvent, that Levi Hammond at the time he executed said obligation was solvent, and owned a valuable farm of one hundred and ninety-six acres which on the 7th day of August, 1869, he fraudulently conveyed to his son, said Thomas F. Hammond, for the nominal consideration of two thousand five hundred dollars which was never paid or intended to be paid: that the deed was made to hinder, delay and defraud the creditors of the grantor and that the grantee had notice of, and participated in this fraudulent purpose; that James Malone at the time he signed said obligation was solvent, and that since his death his executors have settled and made distribution of his personal estate among his residuary devisees and legatees, each of whom has received enough of his estate to pay to the plaintiff the proportionate share of said judgments justly due from James Malone; that the defendant Charles T. Lewis,

at the time he executed the obligation of two thousand five hundred dollars was solvent, but is now insolvent, having voluntarily conveyed all of his property without valuable consideration to the defendant Rust, for the benefit of the wife and children of said Lewis; that the said H. J. Jackson died leaving a large real and personal estate, which is in the possession of his widow and heirs, and prays that the administrators and heirs of H. J. Jackson discover the amount of personal estate of their intestate in their hands; that the residuary devisees of James Malone may discover and make known the property of their testator which came to their hands; that the lands so fraudulently conveyed by Levi Hammond and Charles T. Lewis be held liable for the amounts due from them respectively to the plaintiff; that the amount due from each of his co-sureties be ascertained and be decreed to be paid to him, and for general relief.

The defendants Hall, Haddox, Levi Hammond, Thomas F. Hammond, John C. Patton, as the executor of William Patton, and in his own right, Rust, the wife and children of Charles T. Lewis, and the administrators and heirs at law of H. J. Jackson, answered the bill, to which answers general replications were filed. Levi and Thomas Hammond deny the fraud·alleged against them, and state the consideration for the conveyance of the one hundred and ninety-six acres of land and how much of it was paid; Charles T. Lewis, his wife and children admit that the conveyance to Rust for their benefit of all the lands of Charles T. Lewis, owned in this State was voluntary; the heirs and personal representatives of Jackson deny the execution by their decedent of the obligation of two thousand five hundred dollars. The answers of the administrator and heirs of H. J. Jackson and of the executor and legatees of William Patton, as also those of Hall, and Levi Hammond deny the plaintiff's right to contribution from his co-sureties, and they all substantially allege the following facts: That the defendant, William M. Patton, was the sheriff of Ritchie county for the year 1856, and Hall, Haddox, Levi Hammond, William Patton, Malone, Charles T. Lewis, Henry J. Jackson and the plaintiff were his sureties on his official bond as such sheriff, and the said Taylor was one of his deputies; that said sheriff was in

failing circumstances, and that to indemnify his sureties he transferred to the plaintiff a receipt executed to him by said Taylor in his official capacity for a number of claims, amounting to over four thousand eight hundred dollars, which he had placed in his hands for collection; that Taylor before the 8th of December, 1857, had collected large amounts upon these claims and paid to plaintiff for the benefit of all the sureties six hundred and forty-nine dollars and sixty-four cents, and other sums amounting in the aggregate to two thousand five hundred and forty-four dollars and sixty-four cents; that to obtain all the money needed to pay off the revenue then due the State of Virginia, the said sureties entered into an agreement with Taylor whereby he lent to them the sum of two thousand five hundred dollars for which they executed to him the said obligation, on which by the terms thereof they were obliged to pay interest from its date, and upon which Taylor was to allow a credit for whatever amount might still be collected on the claims mentioned in his receipt; that by the consent of all the co-sureties, the plaintiff was authorized to receive from Taylor said two thousand five hundred dollars—as he had received the other moneys—to be applied in paying off the revenue for 1856 due from said sheriff; that the plaintiff received all of the two thousand five hundred dollars from Taylor and wholly failed to pay the moneys so received by him either to the State of Virginia in payment of said revenue or to Taylor; that he still retains all of said moneys in his hands and is not therefore entitled to contribution for any of the moneys which he paid Taylor on his said judgments; that the plaintiff and Taylor on the 13th of February, 1860, made a settlement of the said claims in Taylor's hands, on which were allowed him as proper credits the following among other items: Two hundred and twenty dollars, paid Wm. M. Patton, February 5, 1857; sixty-five dollars, paid same, January 7, 1857; also one hundred and sixty-one dollars and sixty-four cents, paid March 4, 1857; one hundred dollars, March 15, 1857; one hundred dollars, paid April 10, 1857; one hundred and twenty-three dollars, paid April 17, 1857, and one hundred dollars, paid May 7, 1857, the last six items making six hundred and forty-nine dollars and sixty-four

cents, *and the last five making five hundred and eighty-four dollars and sixty cents.*  By this statement there was found a balance due from Taylor on account of said claims of eight hundred and forty-three dollars and seventy-seven cents, which was applied as a credit on said obligation of two thousand five hundred dollars, when Taylor recovered his said judgment. A copy of this settlement was filed as part of the joint answer of the executor and heirs of William Patton, Rust, Haddox, Lewis and his children.  On the 27th day of June, 1881, before any testimony was taken, the cause was heard and referred to a commissioner to ascertain and report the amount paid by the plaintiff on the said judgments of Taylor against Wm. M. Patton, Daniel Boughner, Hall, Haddox, Hammond, Lewis and Wm. Patton, in the said circuit court and in the Supreme Court of Appeals; whether said Wm. Patton has any estate out of which the plaintiff can be repaid for the amounts paid by him on said judgments ; whether the defendants, Hall Haddox, Levi Hammond and Charles T. Lewis, can contribute to the plaintiff their ratable shares of the amounts paid by him; what estate was owned by Wm. Patton at his death; what amount of personal estate of Henry J. Jackson, deceased, remains in the hands of his personal representatives liable to contribution for his ratable portion of the plaintiff's demand, and the value of his estate which descended to his heirs; and what amount of personal estate of said James Malone remains in the hands of his personal representative, and the amount and value of his real estate, if any, which descended to his heirs, and to which of them it descended together with any other pertinent matters required to be reported by any of the parties.  On the 21st day of June, 1882, the commissioner returned his report in open court which he had only completed on the 17th of June, 1882, wherein he reported, that the plaintiff had paid on Taylor's judgment in the circuit court four thousand six hundred and thirty-four dollars and seventy-three cents, and on the judgment of the Supreme Court of Appeals one hundred and five dollars and forty cents; that Wm. M. Patton and Charles T. Lewis were insolvent; that Cyrus Hall and Levi Hammond are unable to contribute their ratable shares of the moneys paid by the plaintiff; that Wm. Patton

left at his death personal estate appraised at two hundred dollars, and the following real estate: "The White Hall hotel and lot, in Harrisville, with one hundred acres of land near that town, which he devised to his son A. D. Patton and his daughters Louisa Patton, Mary V. Campbell and Lydia Morris, and also forty-two acres of land which he devised to his son John Patton, and a tract of one hundred and eighty-five acres of land which he devised to his sons Berry F. Patton and A. J. Patton; that Henry J. Jackson, after his death, owned the following lands: one tract of four thousand one hundred acres, which has been since sold; one tract of one thousand five hundred acres, another of one thousand one hundred acres, and another of one hundred acres, still in possession of his heirs; another of five hundred acres set apart to Virginia Marshall, a daughter of the deceased; one tract of six hundred acres, set apart to his son Isaac Jackson; one of three hundred acres, set apart to another son, H. L. Jackson; and another tract of five hundred acres to another son Ulysses Jackson; the whole supposed to be worth *fifty thousand dollars*; that no estate of James Malone was in the hands of his personal representatives or had descended to his heirs; and that James Malone and Henry J. Jackson executed the said obligation of two thousand five hundred dollars, dated the 8th day of December, 1857."

To this report John C. Patton and other defendants excepted as follows:

"1st. The report was not completed and retained ten days in the office of the commissioner before he filed the same, as required by law.

"2d. The commissioner errs in not finding and reporting that the said plaintiff is not entitled to any contribution from the said defendants.

"3d. The commissioner errs in not finding and reporting that Cyrus Hall and Levi Hammond, two of the defendants, are not capable of contributing the ratable share of the alleged claim of the plaintiff, if he be entitled to contribution in the premises; that by the records of the county court clerk's office of Ritchie county, it is manifest that the said Cyrus Hall is the owner of several parcels of land, and in the case of *Thomas H. Reeves et al.* v. *Cyrus Hall*, in chancery in

this court it appears by the report of commissioner Strickler that said Hall has title to such lands.

"4th. The commissioner errs in not finding and reporting whether the said D. Boughner ever paid or accounted for the sum of two thousand five hundred dollars and interest which the proof in the records shows was paid to him by the defendant James Taylor, and until it is clearly shown that said Boughner did pay or apply said sum of money or any part thereof, for the benefit of the securities of William M. Patton, late sheriff of Ritchie county, and that the defendants, as such securities, received the benefit thereof, they are not required to make any contribution to the plaintiff.

"5th. And for other errors apparent upon the face of the report, the said defendants J. C. Patton and others except to said report and pray that said report may be set aside and recommitted, &c."

On July 3, 1882, the cause was heard, upon the former orders and decrees, answers filed, general replications thereto and upon the said commissioner's report, depositions and exhibits, and without passing upon any other questions in the cause, or exceptions to said report except the first which was sustained the court recommitted the report to the commissioner "with directions to retain the same in his hands for ten days after completion for examination and exception upon the part of the plaintiff or defendants if they or either of them desire to do so" and leave was given the parties to take further testimony.  The defendants then took the depositions of R. A. Noel first clerk and acting auditor of Virginia and of said Wm. M. Patton, and on October 19, 1882, the commissioner made a supplemental report, showing only that the defendant Wm. M. Patton furnished to the plaintiff one thousand one hundred and ninety-five dollars which was paid to the auditor of Virginia on October 27, 1857, which Taylor had testified he had furnished, which as we will hereafter find was wholly immaterial.

On the 5th of June, 1883, the plaintiff retook the deposition of William M. Patton and also took his own deposition. The defendants John C. Patton and others excepted to said supplemental report and renewed their exceptions to the commissioner's first report.

On the 7th of July, 1883, the cause was finally heard upon former orders and decrees, answers and replications, depositions and exceptions thereto, the report and supplemental report of commissioner and exceptions thereto, all of which were overruled.  By this decree the court ascertained that the plaintiff upon said judgments had on the 7th of May, 1880, paid to Taylor the sums of four thousand six hundred and thirty-four dollars and seventy-four cents and one hundred and five dollars and forty cents, which sums with interest until the 19th of June, 1883, amounted to the sum of five thousand six hundred and twenty-six dollars and fifty-four cents; that William M. Patton, Cyrus Hall and Levi Hammond were in effect insolvent and unable to contribute in the payment of this sum to the plaintiff, and adjudged that one thousand one hundred and twenty-five dollars and thirty-one cents, or one fifth part thereof should be paid to the plaintiff by said Haddox; another part thereof by the estate of William Patton; another part thereof by the said Charles T. Lewis, chargeable upon the tract of two hundred and fifty-six acres of land conveyed to Benjamin Rust by him for the benefit of his wife and children, and one other fifth part thereof by the estate of said Henry J. Jackson, deceased, and that the plaintiff's costs be paid in equal portions by the same parties, and that in default of payment of said moneys for thirty days, execution issue against Haddox, and that a commissioner appointed for the purpose do sell on the usual terms, the two hundred and fifty-six acres of land conveyed by said Charles T. Lewis to pay the amount decreed against him, and to sell so much of said lands owned by William Patton at his death, as will be sufficient to pay the amount decreed against his estate, and also to sell sufficient of lands owned by Henry J. Jackson at his death, to pay the amount decreed against his estate; and that the plaintiff's bill as to the defendant Thomas F. Hammond be dismissed with costs.

From this decree an appeal and *supersedeas* were allowed the defendants.

*R. W. Morris*, *Silas Hall* and *R. F. Blair* for appellants.

*Edwin Maxwell* for appellee.

WOODS, JUDGE:

The plaintiff rests his right to contribution from his co-sureties upon the following grounds: That by the agreement of December 8, 1857, his co-sureties and himself were all equally and jointly bound to pay to James Taylor whatever sum might be justly due to him upon said agreement; that said Taylor in his action at law, having recovered against the plaintiff and his co-sureties, upon said agreement the judgment for four thousand two hundred and seventy-seven dollars and thirty-three cents, the co-sureties who were defendants in said action are estopped by the said judgment, from denying that the two thousand five hundred dollars, mentioned in the said agreement was not in fact paid by Taylor himself on the revenue of 1856; and that the plaintiff having paid off his said judgment, his co-sureties are thereby precluded from showing that any part of the two thousand five hundred dollars was in fact paid to, or received by him, or that any part thereof remains in his hands.

The defendants claim that the said William M. Patton transferred and assigned to the plaintiff and themselves, the receipts of James Taylor for a large amount of claims for their indemnity, and that these receipts were in the care of the plaintiff, who for the joint benefit of all of them received large amounts collected on said claims, which he still retains; that he in like manner, by their consent, received for their joint benefit the two thousand five hundred dollars borrowed from Taylor, and never applied the same to the payment of the revenue of 1856, or otherwise accounted for the same, but that he still retains it, in his own hands, and that when he paid off Taylor's judgment he did so with the moneys so received by him, and that before he can have contribution, he must account for the moneys so received by him for their joint use.

The record in this case, discloses that Taylor instituted his action of covenant against the plaintiff and the surviving obligors in the agreement of December 8, 1857, to recover from them the two thousand five hundred dollars specified therein, alleging in his declaration that he did pay said sum of two thousand five hundred dollars for Patton on the revenue of 1856, and that the same remains unpaid to him, &c.

While this record does not fully disclose the full merits of the defence made to said action, yet enough appears to show, that two grounds of defence were relied on: one, that the defendants therein never executed the said agreement, and the other that Taylor never paid the two thousand five hundred dollars or any part thereof for Patton on the revenue of 1856. What grounds they had at that time to make the first of said defences, does not appear in the records of this case, for it now herein appears, that the plaintiff and each of said obligors did in fact execute said agreement, for the purpose therein specified. From the terms of the agreement itself, it is evident that unless he did advance and pay for Wm. M. Patton on the revenue of 1856, the said two thousand five hundred dollars, he ought not to have recovered in his action at law. It appears from the testimony of Taylor, Haddox, Charles T. Lewis, Wm. M. Patton and the plaintiff himself, all of whom were examined as witnesses on their own behalf in the trial of the action at law, that the real point in dispute therein, was whether the plaintiff had received the two thousand five hundred dollars to be paid by him for the benefit of all the parties concerned, on the revenue of 1856, then due from said Patton. It is abundantly proved that the plaintiff on that trial testified that he "had never received from Taylor a dollar, nor paid out a dollar."

The defendants Patton, Haddox, Charles T. Lewis and Taylor testify that their evidence given in this case, is substantially the same they had given on the trial of said action of covenant; and their testimony given in this case clearly proves, that the plaintiff was the active agent on behalf of all the sureties, to receive the moneys collected by Taylor on the claims mentioned in his receipts which had been assigned to them for their indemnity; and also to receive from Taylor the two thousand five hundred dollars mentioned in the agreement, and to pay the same on the revenue of 1856, and that no part of these moneys was paid to, or received by any of the sureties except the plaintiff. Upon this testimony and the other facts before them, the jury found against them in favor of Taylor the sum of four thousand two hundred and seven-seven dollars and thirty-three cents. Whether this finding was correct or not, is now immaterial. It is

evident that whether the jury regarded the plaintiff as the agent of Taylor, to pay the revenue for him, or the agent of Taylor and the said sureties, for the same purpose, they did in effect find the co-sureties liable to Taylor because of the failure of the plaintiff to return to the said Taylor the moneys he received from him, which would have been sufficient to discharge the whole of said demand. If there were error in the proceedings in the action at law, and if Taylor was improperly permitted to recover therein, upon a state of facts, which did not entitle him to recover, this cannot be charged as the mistake or default of the co-sureties alone, for the plaintiff was a co-defendant with them in the same action, and the mistake, neglect or default of one defendant, was the mistake, neglect or default of all, and in a court of equity, neither of the defendants is entitled to any advantage over the other on account of the mutual mistake of all.

While the judgment recovered by Taylor against the surviving obligors in said agreement is, *between them and Taylor*, conclusive of the fact, that he did in some manner, and by some agency pay two thousand five hundred dollars for Wm. M. Patton on the revenue of 1856, yet it is not conclusive of any fact not necessarily involved in the issues in that action; and as to the deceased obligors, it is not conclusive of anything. But as it appears from the record that the executors and devisees of James Malone, and the personal representatives, distributees and heirs of Henry J. Jackson are properly before the court; and that said James Malone and Henry J. Jackson executed the said agreement dated the 8th of December, 1857, and as it will be hereafter seen, that the plaintiff was by their consent, and by that of the other co-sureties authorized to receive from James Taylor the two thousand five hundred dollars and to apply the same to the payment of the revenue then due from Wm. M. Patton for the year 1856, and that he did so receive the same, their estates must be held liable to reimburse the plaintiff the amounts that may be ascertained to be justly due to him from each of them, in the same manner and to the same extent as if Taylor himself had paid the same upon said revenue. If then the plaintiff was the agent employed by Taylor to receive and pay said two thousand five hundred dollars on the

revenue of 1856, which he then represented to amount to two thousand eight hundred dollars, and the whole or any part thereof, was not needed, or used by him for that purpose, then the money so received by him, was either the money of Taylor or of the said obligors in said agreement, and when he paid off the said judgment of Taylor for four thousand two hundred and seventy-seven dollars and thirty-three cents, he was in equity and good conscience paying Taylor with his own money, or using the money of all the co-sureties, in paying their own debt, so that in either case he was simply using the indemnity remaining in his own hands for the joint benefit of all the co-sureties.

The right to contribution between co-sureties results from the maxim that "equality is equity." As all the sureties are equally bound to the principal, he may at his election, collect his debt in equal portions from each surety, or the whole of it from any one of them. As between the sureties and the creditors, they are all principals, and being principals by the terms of their written contract, parol evidence will not be received to vary or contradict it. But while the creditor has the right to collect all his debt from one of the sureties, the law clothes that surety with the power to enforce contribution from his co-securities. The obligation of co-sureties to make contribution to each other is not founded on contract between them, but rests on a principle of equity, so long and so generally acknowledged, that courts of law in modern times have assumed jurisdiction over it. While the creditor is bound to the utmost good faith to all the sureties, they in their turn are entitled to the benefit of all the securities which he may have acquired for the payment of his debt, so that if he abandon or release any such security without the consent of the sureties, they will in a court of equity be released from their liability, at least to the value of the security so released or abandoned.

In like manner the sureties between themselves are required to act with like good faith towards each other, and each one is entitled to his proportionate share of any security, which any one may have obtained for the payment of the debt or for his own indemnity from the principal debtor. And when any one of the sureties who has obtained such in-

demnity has discharged the whole debt or any amount greater than his fair proportion thereof, seeks to obtain contribution from his co-sureties the maxim that "whoever asks equity must do equity" applies.   As this right to contribution between co-securities is founded on equitable principles, contribution will not be enforced when it would be inequitable; and if a party base his right to a recovery on principles of natural equity, the defendant may appeal to the same principles in his defence.    24 Miss. 581; 66 N. Y. 255; 26 Ala. 728; Brandt on Suretyship, sec. 228.

In *Dennis* v. *Gillespie*, 24 Miss. *supra*, Granby and Gillespie became the sureties of R. Kent and E. D. Kent for two-thousand five hundred and thirty-five dollars and ninety-seven cents to N. C. & Co., who recovered judgment for the same.    Granby received from E. D. Kent a sum of money more than sufficient to pay the debt, and held the same until he died.    His administrator, Dennis, paid off the judgment, and sued the co-surety, Gillespie, for contribution, but the court of appeals of Mississippi, upon these facts held, that the co-surety who paid the debt, having the money of the principal debtor in his hands, was not entitled to contribution : "That the right to contribution rests not in contract but in natural equity, on the ground of burden and benefit. If a party base his right to recover on principles of natural equity the defendant may appeal to the same principles in his defence.    That the plaintiff had shown as his equity, the payment of the debt by Granby, and thus makes out a *prima facie* case for relief; while the defendant on his part has shown that Granby received from the principal debtor a sum of money exceeding the whole amount of the debt, before it was due.    *To state the case, is to decide it."*

In *Tarr* v. *Ravenscraft*, 12 Gratt. 642, one of two sureties of an insolvent administrator purchased certain legacies, for which the sureties were bound, at a discount, and when he claimed contribution from his co-surety for the full value of the legacies the court of appeals of Virginia held that he was only entitled to charge his co-surety for his proportion of the actual cost of the legacies, and Lee, Judge, delivering the opinion of the court, says : "That sureties are not only entitled to contribution as between themselves personally for

moneys paid out in discharge of the common debt, but they may claim the benefit of all securities which any of their number may have taken for his indemnity. And if a surety who seeks contribution has been reimbursed part of what he has paid by the debtor himself, or through a counter security, or from any source, *he must give credit* for the amount reimbursed, and can only claim contribution for the balance."

In *Taylor* v. *Morrison*, 26 Ala. 728, the same doctrine was held. In *Wells* v. *Miller*, 66 N. Y. 255, it was held that the "right to contribution between co-sureties depends upon principles of equity rather than upon contract. The equity does not arise from the fact simply that both parties are sureties. They must stand in the same relation to the principal, without equities, between themselves. It is competent to prove by parol, the relation of the parties to each other, and any extrinsic facts affecting the equities."

In *Silvey* v. *Dowell*, 53 Ill. 260, Dowell and Silvey became the sureties of Welch to Claypool in a note of two hundred and fifty dollars, given for purchase of certain personal property. Welch, in order to indemnify his said sureties, executed a chattel mortgage on said property, of which Dowell took possession and agreed to pay the debt to Claypool, of which he paid one half and then procured Stephenson to buy the note from "C.," Dowell furnishing him the money to do so. "S." had the note assigned to himself upon which he recovered judgment against Dowell and Silvey for the residue of the debt, and then assigned it to Dowell, who sued out execution thereon, and had the same levied on the property of Silvey, who for these reasons, enjoined the collection of the judgment, and on appeal to the supreme court, it was held, "that Dowell having obtained full indemnity for himself, and agreed to pay it, it was against equity and good conscience that Silvey should be compelled to pay a debt, which his co-surety Dowell was morally and equitably, if not legally, bound to pay."

In *McMahon* v. *Faucett*, 2 Rand. 514, it was held "that where there are several sureties to a bond and the principal conveys property in trust, to indemnify some of them, and the rest are not provided for in the deed, the sureties who

are omitted shall nevertheless be protected. by the deed of trust."

It is a settled principle of equity that if one of several co-sureties, subsequently take a security from the principal, for his own indemnity, it enures to the common benefit of all the sureties. If therefore, the principal convey property by deed of trust expressed for the benefit of one of the sureties only, the others have an equity to come upon it, to the same extent, that he can. *West* v. *Belches*, 5 Munf. 187; *McMahon* v. *Faucett, supra,* 1 W. & T. Leading Cases in Eq. 171; *Gregory* v. *Merrell*, 2 Ired. Eq. 233; *Silvey* v. *Dowell, supra.* A surety who has the means of indemity in his own hands, cannot pay the debt of his principal and proceed against a co-surety for contribution. As each surety has an equal equity against the principal, no one can engross the funds supplied by him to the exclusion of the others. If the principal has given securities to one surety, the latter cannot in chancery recover contribution from his co-surety without accounting for the property, and either showing how much he received upon it, and making a ratable abatement of the. proceeds, or showing that by due diligence he could not realize anyt hing from it. *Dennison* v. *Gillespie, supra;* W. & T. Leading Cases Eq. 173; *Taylor* v. *Morrison*, 26 Ala. 728; *Silvey* v. *Dowell, supra.* A surety thus receiving securities for his own indemnity, is a trustee for his co-sureties. W. & T. Cases Eq. 173.

In *Dobson* v. *Prather*, 6 Ired. Eq. R. 31, there was a judgment against the principal and two sureties, and an execution levied on the property of one of the sureties. Prather bought this property from this surety pending the levy and afterwards obtained an assignment of the judgment to enable him to have the whole amount satisfied out of the property of the co-surety, and issued an execution for that purpose; it was held that a court of equity would restrain him from collecting out of the co-surety more than the fair proportion which the latter owed. For having purchased the property of one of the sureties, which was then charged with the legal lien of the execution, the same in his hands, continued liable for that surety's fair proportion of said judgment, and he could not relieve himself of that burden by becoming the

owner of the judgment and throwing the burden resting upon his own property, or upon that of the other surety. In other words, the indemnity to the extent of his vendor's portion of this debt was in his own hands, and he was, in equity and good conscience, bound to account for it.

A careful examination of the evidence in this case clearly shows that as early as the 5th day of February, 1857, the defendant, William M. Patton, then sheriff of Ritchie county, had placed a large amount of claims in the hands of James Taylor one of his deputies, for collection; that he was at that time so much embarrassed in his pecuniary affairs, that he had assigned the receipt given by Taylor for these claims to the plaintiff and his other sureties in his official bond, to indemnify and save them harmless, and that these receipts so assigned were in the custody of the plaintiff; that this fact was not known to Taylor until after the 5th day of February, 1857, on which day he paid said William M. Patton upon said claims the sum of two hundred and twenty dollars; that some time before the 8th of December, 1857, William M. Patton made known to his sureties, that he would need help to raise the revenue due the State for the year 1856; that the collection by Taylor on the claims mentioned in the receipts, would not be sufficient in amount, nor available in time, to meet the deficit in the revenue of 1856; that for some time before the 8th of December, 1857, negotiations were commenced with James Taylor by the sureties of Patton, or some of them to borrow from him two thousand five hundred dollars for that purpose; that neither Patton nor any of his sureties except the plaintiff had any negotiations with Taylor in regard to the loan of two thousand five hundred dollars; that the plaintiff was the person selected by the other sureties to receive the two thousand five hundred dollars from Taylor and apply it to the payment of the revenue for the year 1856 due from said Patton, which was represented by the plaintiff to amount to about two thousand eight hundred dollars, and that none of the other sureties ever received any part of the two thousand five hundred dollars borrowed from Taylor, or of the moneys collected by him on the claims specified in his receipts assigned to said sureties as aforesaid, and that none of the sureties,

except the plaintiff, at any time after the execution of the agreement dated the 8th of December, 1857, ever had anything to do with this business, and none of these facts is denied by the plaintiff in his deposition filed in this cause more than a year and a half after the deposition proving these facts was filed. Neither does he deny that he had with the defendant Levi Hammond, after the 8th of December, 1857, the conversation in regard to the two thousand five hundred dollars, and in regard to the necessity of the co-sureties getting together and having a settlement with Taylor on account of the claims in his hands for collection. The defendant Charles T. Lewis testified that the two thousand five hundred dollars was to be paid into the hands of the plaintiff; that the other sureties gave him authority to collect it from Taylor and to disburse .it. The defendant Haddox testified the same in substance; and Taylor testifies that he did not pay one cent upon the revenue, although that was the way the bond was made; that the plaintiff only wanted to borrow the money from him; and none of these facts are contradicted by the plaintiff. The plaintiff held the receipts of Taylor, assigned for the benefit of all the sureties; he was the active agent in negotiating the loan of the two thousand five hundred dollars from Taylor for the benefit of all; he was the authorized agent to collect the two thousand five hundred dollars and apply it to the payment of the revenue of 1856, for the common benefit of all the sureties, and he represented to Taylor that it would require about two thousand eight hundred dollars for that purpose. Being the holder of Taylor's receipts it was his duty, as it was his interest and the interest of his co-sureties to settle with Taylor and see that his collections were either paid over to the Auditor, on the revenue of 1856, or to collect it himself and apply it, and also the said two thousand five hundred dollars to that purpose. Did he settle with Taylor or ratify and approve a statement of the account of his collections made by Taylor himself? The answer of John C. Patton and others allege that such a settlement was made by the plaintiff with Taylor on the 13th of February, 1860, and that on such settlement Taylor was found to be indebted on account of said claims collected by him in the sum of eight hundred and forty-three

dollars and seventy-seven cents, and they file with their answer as part thereof, a copy of that statement, or settlement, which shows that Taylor out of the claims in his receipt to Patton for four thousand eight hundred and twenty-seven dollars and ninety-nine cents was allowed credits for sixty-five dollars and two hundred and twenty dollars, paid Wm. M. Patton, as also for the items of one hundred and sixty-one dollars and sixty-four cents, one hundred dollars, one hundred dollars, one hundred and twenty-three dollars and one hundred dollars, all paid before the 8th of May, 1857, and also for the sums of seven hundred dollars and one thousand one hundred and ninety-five dollars paid to the Auditor, and also the last item of credit, being one hundred and fifty-three dollars and ninety-one cents for his commissions, and showed a balance due from Taylor of eight hundred and forty-three dollars and seventy-seven cents, under which last sum were written the words "O. K. amount due." The plaintiff being asked on his cross-examination whether he and Taylor did not have a settlement on February 13, 1860, and whether the balance found due from Taylor was not eight hundred and forty-three dollars and seventy-seven cents, and whether there was not written on that settlement the words "O. K. amount due" eight hundred and forty-three dollars and seventy-seven cents, and whether this sum was not allowed as a credit on the two thousand five hundred dollars bond when the judgment thereon was had, answered: "I denied at the time" (that is when he was examined as a witness on the trial of Taylor's suit on the bond,) "and now deny having made any such settlement. I did not make any such settlement. That amount may have been allowed on the judgment." Being further cross-examined he was asked: "Did you not admit before the jury which tried the case at law, that the words 'O. K. amount due' endorsed at the foot of said settlement were in your proper hand-writing?" He answered: "I admitted the words 'O. K.' but I denied then, and I now deny having made any such settlement." He was further asked on cross-examination: "Did you not likewise admit that the figures 'one hundred and fifty-three dollars and ninety-one cents' set opposite the word "commissions," on said settlement, were your own figures made by you?" He

answered: "I don't *recollect* of admitting any such thing. It I could see the paper, I could tell as to what I admitted. I would not deny anything that could be made plain to me I had admitted." The original paper containing that settlement was then lost, and the plaintiff knew it could not be produced for his inspection. How could the sight of the paper remind him of what he had admitted? It was immaterial to *recollect* what he *admitted;* the real questions were, was such a paper as the alleged settlement ever made by anybody, and did the plaintiff see it, and write on it the words "O. K. amount due?" Did he write on it the *figures "one hundred and fifty-three dollars and ninety-one cents"* opposite the word commissions? Did he approve it, ratify or assent to the statement of account on that paper as a correct statement? He does not deny that there was such a paper; he does not even pretend that he was ignorant of the fact that there was such a paper. He does not deny that the words "*O. K. amount due,*" endorsed on that paper were in his hand-writing, nor that he made the figures "*one hundred and fifty-three dollars and ninety-one cents*" opposite the word "commissions." All these facts, if facts they be, were within his personal knowledge, and he could and ought to have denied them if they were not true. He admits however that the letters "*O. K.*" at the foot of the statement were made by him in his own *hand-writing.* This admission is conclusive of the facts that there was such a paper, that the plaintiff had seen it, had had it in his hands; and who can hesitate to believe that he examined it, understood it, assented to and approved its correctness, when at the foot of it under the figures eight hundred and forty-three dollars and seventy-seven cents he deliberately endorsed on the same in his own hand-writing under those figures, showing the balance due the significant letters "*O. K.*" This balance according to the terms of the agreement of December 8, 1857, was to be applied, and was in fact applied as a credit on said debt of two thousand five hundred dollars, when Taylor recovered his judgment of four thousand two hundred and seventy-seven dollars and thirty-three cents against the plaintiff and his co-sureties. Now in this statement or settlement there appear as credits to Taylor, on account of

said claims the said payments to Patton, the items compos-
ing said sum of six hundred and forty-nine dollars and sixty-
four cents proved by Taylor to have been paid in cash to
said plaintiff, and the seven hundred dollars and the one
thousand one hundred and ninety-five dollars, which plain-
tiff sent from Baltimore to the Auditor of Virginia. Now if
these moneys had not in fact been paid to the Auditor for
Patton by Taylor, the balance of eight hundred and forty-
three dollars and seventy-seven cents found due from Taylor
on February 13, 1860, would have been increased to the sum
of two thousand seven hundred and thirty-eight dollars and
seventy-seven cents, being within less than one hundred dol-
lars of enough to pay off the whole two thousand five hundred
dollars and the interest accrued thereon up to that date. It
was the plaintiff's interest to make that settlement, and the
fact that all said credits were allowed to Taylor by the plain-
tiff, is almost conclusive evidence that he was justly entitled
to them, and that the plaintiff then remembered that the
moneys therein allowed as credits were received by him, or
paid over to the Auditor by Taylor but little more than two
years before that time. The entries on that settlement in
connection with the testimony of Taylor show that the
plaintiff at that time had received in cash from Taylor sums
amounting in the aggregate to five hundred and eighty-four
dollars and sixty-four cents on account of the claims in his
hands for collection for the benefit of himself and his co-
sureties of Wm. M. Patton, and as no such sum was paid by
him to the Auditor, the same still remains in his hands, and
is held by him, as it was in fact received for the benefit of
himself and his co-sureties. The testimony of Taylor shows
that before December 8, 1857, what he had paid out in
money, and in the delinquent list, and what he had paid to
the Auditor amounted to about four thousand dollars. R. A.
Noel, the first clerk and the acting Auditor of Virginia, was
examined as a witness for the defendants, on the 4th day of
October, 1882. In his testimony, and as part thereof, he fur-
nished a full statement from the records of the Auditor's
office of Virginia of the account of Wm. M. Patton as sheriff
of Ritchie county, for the revenue of 1856, whereby it
appears that on December 8, 1857, there had been paid on

account of the revenue of 1856, in money and the delinquent lists the sum of *four thousand and fifty-three dollars and forty-two cents*, leaving on that day still due the State one thousand five hundred and thirty-seven dollars and ninety-nine cents, and one dollar and five cents, both of which sums were fully paid on December 19, 1857. Up to December 8, 1857, there is no evidence that any money was paid by any other person than James Taylor. It is true that Patton makes some pretensions that he might have paid this balance, but the testimony shows that it was impossible for him to have done so.

It remains to be considered whether the plaintiff received the said two thousand five hundred dollars from Taylor, and if so, whether he ever applied any part of it in discharge of the balance of the revenue of 1856, due from William M. Patton? It is claimed by counsel for the appellee that there is no proof that the plaintiff received the two thousand five hundred dollars, for while it is admitted that Taylor testified distinctly that he paid this money to the plaintiff, the plaintiff in turn testified positively and distinctly that the money was not so paid to him.

Where two witnesses equally credible, testify in relation to a fact within the personal knowledge of both, and one of them distinctly testifies that a certain act was done, and the other with equal distinctness, swears that the act was not done, and there is no evidence or circumstance to impeach the evidence of the one, or to corroborate the evidence of the other, it must be admitted the fact is not proved. But to reach this result, both witnesses ought to be equally disinterested, for if one has no interest whatever in the result to be brought about by his testimony, and the other will be largely profited in case the fact testified to by him be established the statement of the disinterested witness must necessarily carry with it greater weight than the testimony of the other. The common law rule of evidence excluded the testimony of the interested witness, while the testimony of one disinterested credible witness was sufficient in most cases to establish the disputed fact. While sections 22 and 23 of chapter 130 of the Code renders an interested witness competent, the degree of credibility to which such interested witness is entitled

must necessarily be affected by the extent of his interest on the question upon which he testifies. In the case under consideration the witness, James Taylor, has no interest of any kind. It is to him a matter of perfect indifference, whether the plaintiff succeeds or fails. On the other hand the plaintiff is the sole beneficiary of every dollar which may be recovered in his suit. So far therefore as a large pecuniary interest in the result of the suit, could possibly bias his mind, the credibility of his testimony is weakened, when it conflicts with the testimony of another witness wholly disinterested, of equal credibility. And this is more especially so when the statements of the disinterested witness as to material facts resting within his personal knowledge, are clear, direct and positive, while the testimony of the interested witness in relation to the same facts, resting also in his personal knowledge which tend to contradict the statements of the other, are wanting in these qualities of distinctness, clearness and certainty, and are so qualified as to make it difficult or impossible to contradict them. Comparing the testimony of the witness, Taylor, with that of the plaintiff in regard to the material question, whether he did receive the said two thousand five hundred dollars or not, Taylor testifies positively and without any qualification that on the next morning after the date of said agreement he let the plaintiff have the money (two thousand five hundred dollars) on it, and that at the time the plaintiff got the money, and before he got the money, he said that he wanted it to pay it on the revenue of 1856, and that the plaintiff was the general manager who superintended the business of the securities of Patton when sheriff of Ritchie county; and that the plaintiff had received from him in cash out of the moneys collected on said claims the sum of six hundred and forty-nine dollars and sixty-four cents, and that he never paid any money to any of the other sureties of Patton, and that he never paid any money on the revenue of 1856, after the date of the 8th of December, 1857. None of these statements are contradicted by any circumstance, or by the testimony of any witness, appearing in this record, excepting only by the testimony of the plaintiff. On the contrary the testimony of Taylor is strongly corroborated by the following facts:

1. That Wm. M. Patton was so much embarrassed in his pecuniary affairs, as early as the 5th of May, 1857, that he assigned and transferred to his sureties in his official bond for their indemnity certain receipts he held on his deputy, James Taylor, for claims to a large amount ranging from four thousand two hundred dollars to six thousand dollars and that these were in hands of the plaintiff.

2. That said Patton sometime before the 8th of December, 1857, informed the plaintiff, that he would be unable to raise the money to pay the revenue of 1856, without assistance.

3. That arrangements were made with Taylor, to borrow from him this money, and that the negotiations for that purpose were made by the plaintiff.

4. That the plaintiff, by the authority and with the consent of all the other sureties, was authorized to collect and receive the two thousand five hundred dollars, on this loan from Taylor, and to apply it in payment of the revenue due from Patton for the year 1856; and

5. That none of the other sureties ever received any money from Taylor or from the plaintiff. These corroborating circumstances are fully proved, and none of them is in any manner called in question, or denied by the testimony given by the plaintiff himself, or by any other witness.

How is the positive testimony of the witness Taylor, answered by the plaintiff? When asked by his own counsel to "state what portion of the two thousand five hundred dollars, referred to in the agreement, dated on the 8th of December, 1857, was paid to him by Taylor," the plaintiff answered: "To the best of my knowledge and belief, there was not any portion of it paid to me." And when he was further asked to state, "what portion of said two thousand five hundred dollars was mis-appropriated by you, and squandered and appropriated to your own private and individual use?" He answered: "*If I ever received the two thousand five hundred dollars*, there was no portion of it mis-appropriated or applied to my own individual use." And when further asked by his counsel, "what portion of said two thousand five hundred dollars was used by you for your own personal aggrandisement and use?" He answered: "No portion of it." After the cross-examination of the plaintiff

was completed, the plaintiff's counsel, evidently desiring to obtain from him a positive denial of the fact that Taylor had paid him any portion of said two thousand five hundred dollars, asked him this very suggestive question: " On the various questions asked you on your cross-examination, there may be some confusion as to what you mean to say in relation to the payment to you, by James Taylor, at the time of or after the date of the contract dated December 8, 1857, of the two thousand five hundred dollars mentioned in the contract; please state what portion of that money was, on the day of the date, or after the day of the date of that contract, paid by James Taylor to you?" To which he answered: " *Not one dollar, to the best of my knowledge and belief.*" This last answer, made by the plaintiff, after his counsel had suggested to him in his question, that the meaning of his former answers was doubtful, or ambiguous, must be taken to be *the strongest* denial he could truthfully make. It is evident that this qualified statement is far from being a positive denial of the positive and unqualified statement of Taylor, that he did pay to the plaintiff the said two thousand five hundred dollars. It can only mean, that he has no knowledge or recollection of that fact, and admitting that all knowledge or recollection of that fact had faded from his memory, he might, after the lapse of twenty-five years from the time the transaction occurred, truthfully make answer to that question, as he did, " Not one dollar, to the best of my knowledge and belief."

But such an answer is not inconsistent with, nor a denial of the truth of Taylor's statement, for it may be true, that he did pay to the plaintiff the two thousand five hundred dollars, and the plaintiff may have forgotten, as he doubtless did forget, that he received the two thousand five hundred dollars, as he evidently did the fact that Taylor had paid him any of the moneys collected on the claims mentioned in said receipts, which appear in the statement of February 13, 1860, to which he affixed the letters "O. K." Another circumstance appears in the record worthy of remark tending to show the unsettled condition of the plaintiff's memory as to this transaction, and that is, that while it is proved that the plaintiff when examined as a witness for himself and his co-sureties

on the trial of Taylor's action at law against them to recover the said two thousand five hundred dollars, the plaintiff testified without qualification, that "he had never received a dollar, nor paid out a dollar" of this money, yet in his testimony given in this suit, he falls very far short of repeating this statement, but he qualifies and weakens it, as a conscientious man ought to do, who is not certain of the facts to which he testifies, and makes it correspond with the present state of his mind on the subject, and says in effect, that if the fact did take place, I have now, no knowledge or recollection of it, and because I have no such knowledge or recollection, I say that according to the best of my knowledge and belief I never received the said two thousand five hundred dollars, or any part of it. The plaintiff then must be held to have received for the benefit of himself and his co-sureties the said two thousand five hundred dollars, and also the several amounts received by him from Taylor out of the claims mentioned in said receipts, and that so much thereof as he has never paid upon the revenue of 1856 still remains in his hands for the benefit of himself and his co-sureties. Did the plaintiff ever apply any of the moneys received by him to the payment of the revenue due from Patton for the year 1856? It must be admitted that the plaintiff, when examined as a witness in his own behalf, and on behalf of his co-sureties, on the trial of the action of Taylor against them, testified that he had never paid a dollar for said Patton on the revenue of 1856, but that statement was made in connection with a fact which he then confidently believed to be true; that he had never received a dollar from Taylor, and believing and asserting that fact to be true, he could not do otherwise than say, "he had never paid out a dollar." But it does not follow that because the plaintiff was mistaken or had forgotten the fact that he had received the two thousand five hundred dollars, that he had therefore misapplied or appropriated it to his *own use*, if there was any debt then existing to which it was his duty to apply it. According to the testimony of the acting Auditor of Virginia, there was due from Patton, as sheriff of Ritchie county, to the State of Virginia on December 9, 1857, on the revenue for the year 1856, one thousand five hundred and thirty-seven dollars and

ninety-nine cents and one dollar and five cents, amounting in the aggregate to one thousand five hundred and thirty-nine dollars and four cents, and that on December 19, 1857, this sum was fully paid. Taylor testifies that no money was paid by him to the Auditor upon the said revenue after December 8, 1857, and there is no evidence in the record, worthy of a moment's consideration, that Patton ever paid or claimed to have paid a cent after, or even before that date, while it is abundantly proved that he knew but little, and cared but little who paid the revenue, or whence the same was obtained. It is not pretended by the plaintiff or Patton, that any other of the sureties ever paid or furnished a cent to pay on the revenue of 1856. The plaintiff on his examination-in-chief does not say, that he paid any money to the Auditor on account of said revenue; but upon his cross-examination, he was asked this question : "In answer to a former question propounded to you, in your examination-in-chief, you state, 'If you ever received the two thousand five hundred dollars, there was no portion of it ever misappropriated or applied to your individual use,' what use did you apply it to, *if received by you*, and what *evidence* have you of its appropriation?" to which he answered : "I say now, there was no portion of it, if received by me, misappropriated or applied to my own use by me, and the *best possible evidence of the money being properly and honestly* applied, if received, is the account from the Auditor's office showing that all the *revenue for 1856 was paid.*" He was then further cross-examined as follows :

Question—"You never paid it, did you ?"

Answer—"I have no knowledge or recollection of having paid it."

Q.—"Your witness Patton, says he paid it; did you furnish the money ?"

A.—"If Patton paid it, it must have been with money furnished by Taylor."

Q.—"How paid by James Taylor?"

A.—"I can't tell you, sir."

Q.—"Then why do you say it must have been by money paid by James Taylor, if you can't tell?"

A.—"Neither Patton nor his sureties would have paid it

out of the money of their *own* funds and let Taylor hold their obligation for *money that was not paid by him.*"

Q.—"Then you tacitly admit that Taylor did pay the money?"

A.—"He did not to my knowledge."

Here then this testimony on this branch of the subject rests. The only persons who were in any manner bound to pay the balance due from Patton on the revenue of 1856 were Patton himself, because it was his debt; Taylor, because he was entrusted with the collection of a large amount of claims assigned to the said sureties for their indemnification the plaintiff and his co-sureties in the official bond of Patton as such sheriff, and the plaintiff, because he was selected by the other sureties as their agent to receive the said money and apply it in payment of the said revenue, and because he had in fact received it for the benefit of himself and them. The testimony of Patton shows, that he did not pay it, and all the testimony tends to show, that he could not have paid it. Taylor testifies that he never paid any money upon the revenue after the 8th of December, 1857. It is not pretended by anybody that any of the plaintiff's co-sureties paid it. It is proved as already stated that the plaintiff was the active agent and manager for the other co-sureties, in respect to settling and adjusting for them the deficit due from Patton; that the plaintiff negotiated the said loan of two thousand five hundred dollars, and was by the consent of all the other co-sureties to receive it from Taylor and apply it to the payment of the said revenue; that he did receive the two thousand five hundred dollars on December 9, 1857, as well as said five hundred and eighty-four dollars and sixty-four cents for that purpose, that it was his duty to so apply said moneys, and that, within ten days after he received the two thousand five hundred dollars, on December 19, 1857, the whole balance of one thousand five hundred and thirty-nine dollars and four cents, due upon the revenue of the year 1856, was in fact paid. Under these circumstances we must presume that the plaintiff did discharge his duty in this respect, and that this balance of one thousand five hundred and thirty-nine dollars and four cents was paid by the plaintiff, although the recollection of it may have passed from his memory. By

reference to the statement or settlement dated February 13, 1860, to which the plaintiff affixed " *O. K.*" it appears that of the items therein allowed as credits to James Taylor, composing the sum of six hundred and forty-nine dollars and sixty-four cents, which he testifies he paid in cash to the plaintiff, the first item of sixty-five dollars was in fact paid to William M. Patton on the 7th of January, 1857, and the same, therefore, ought evidently to be deducted from the sum of six hundred and forty-nine dollars and sixty-four cents, which will leave the correct sum with which the plaintiff ought to be charged five hundred and eighty-four dollars and sixty-four cents instead of six hundred and forty-nine dollars and sixty-four cents, of a date as early as May 7, 1857. This sum of five hundred and eighty-four dollars and sixty-four cents, as well as the sum of nine hundred and sixty dollars and ninety-six cents, the balance of said two thousand five hundred dollars, remaining, after paying to the Auditor the said sum of one thousand five hundred and thirty-nine dollars and four cents, due on the revenue of 1856, the plaintiff, in equity and good conscience, ought to have paid over to the said Taylor, as of the 19th of December, 1857, when the correct balance due the Auditor of Virginia was ascertained and paid; and this Court, acting on the well settled principle, that a court of equity will consider as done, what ought to have been done, will consider that, when the plaintiff, on the 7th day of May, 1880, paid to the said Taylor the sums of four thousand six hundred and thirty-four dollars and seventy-four cents, and one hundred and five dollars and forty cents, in satisfacton of his judgments, he applied for that purpose the said sums of five hundred and eighty-four dollars and sixty-four cents, and nine hundred and sixty dollars and ninety-four cents with interest thereon from the 19th day of December, 1857, amounting in the aggregate on the 7th day of May, 1880, to the sum of three thousand six hundred and twenty-one dollars and thirty-four cents, and that the true amount, upon which the plaintiff is entitled to contribution is only the sum of one thousand one hundred and eighteen dollars and seventy-nine cents with interest thereon from the 7th day of May, 1880, until paid, of which he must pay his equal portion, and that in consequence thereof, all of

the said judgment of the Supreme Court of Appeals for one hundred and five dollars and forty cents, and the judgment of said circuit court for four thousand two hundred and seventy-seven dollars and thirty-three cents with interest and costs, excepting only, as to the sum of one thousand one hundred and eighteen dollars and seventy-nine cents with interest from the 7th day of May, 1880, recovered by James Taylor, against the the plaintiff and his co-sureties, as surviving obligors in said agreement dated December 8, 1857, must be declared extinguished.

There is no evidence in this cause to sustain the report of the commissioner, in reporting that the defendants Cyrus Hall and Levi Hammond were insolvent and unable to contribute their ratable shares of whatever amount the plaintiff might be entitled to recover, and the circuit court erred in overruling the defendant's third exception to the report. It also erred in declaring by its decree that the plaintiff was entitled to contribution upon any other, or greater amount, than one thousand one hundred and eighteen dollars and seventy-nine cents with interest from the 7th of May, 1880, and in decreeing that there should be paid to the plaintiff the sum of one thousand one hundred and twenty-five dollars and thirty-one cents with interest from the 19th of June, 1883, by each of the defendants Jonathan H. Haddox and Charles T. Lewis, and from each of the estates of William Patton and Henry J. Jackson.

We are therefore of opinion that so much of the decree of the circuit court of Ritchie county rendered in this cause on the 7th day of July, 1883, as dismissed the plaintiff's bill as to the defendant, Thomas F. Hammond with costs, must be affirmed, and that the said decree in all other respects must be reversed with costs to the appellants and the cause must be remanded to the said circuit court for further proceedings, according to the principles settled in this opinion and to the principles governing courts of equity.

Reversed in Part.    Remanded.